**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
UNITED STATES OF AMERICA

-v.-                                                   21-MJ-329
                                                       Docket Number
STUART CONKLIN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff ___  Defendant ___  DOJ ✓
Name: F. Turner Buford
Firm Name: U.S. Attorney's Office, E.D.N.Y.
Address:   271A Cadman Plaza East
           Brooklyn, NY 11201
Phone Number: (718) 254-6483
E-Mail Address: turner.buford@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES ___ NO ✓
If yes, state description of document to be entered on docket sheet:
_____
_____

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered: _____
Judge/Magistrate Judge: _____
Date Entered: _____

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

Ongoing criminal investigation.

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn, NEW YORK

        3/16/2021                    /s/ RER

_____
**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE _____
                              DATE

**MANDATORY CERTIFICATION OF SERVICE:**
A.) ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation: _____ ; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

   March 16, 2021                    /s/ F. Turner Buford
_____                    _____
     DATE                               SIGNATURE

RTP:FTB
F. #2019R01130

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

STUART CONKLIN,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR AN ARREST WARRANT

(49 U.S.C. § 21311)

21-MJ-329

EASTERN DISTRICT OF NEW YORK, SS:

        ROBERT J. STANEK, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Transportation, Office of Inspector General ("DOT-OIG"), duly appointed according to law and acting as such.

        On or about April 26, 2019, within the Eastern District of New York, the defendant STUART CONKLIN did knowingly and willfully make a false entry in a record or report required to be made or preserved under Title 49, United States Code, Section 20101 et seq., and destroyed, mutilated, changed, or by other means falsified such a record or report, and made or preserved such a record or report in violation of a regulation prescribed or order issued under Title 49, United States Code, Section 20101 et seq.

        (Title 49, United States Code, Section 21311)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.  I am a Special Agent with DOT-OIG and have been since 2000. Through my work as a special agent, I have been involved in the investigation of numerous cases involving crimes within the jurisdiction of the United States Department of Transportation. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including various documents and reports; and from reports of other law enforcement officers involved in the investigation.

2.  The DOT-OIG, along with the Office of Inspector General for the Metropolitan Transportation Authority ("MTA-OIG") and the Metropolitan Transportation Authority Police Department ("MTA-PD"), have been conducting an investigation of a train derailment that occurred on the Long Island Rail Road ("LIRR") at approximately 3:00 a.m. on May 25, 2019. The derailment occurred at the Speonk Interlocking branch of the LIRR when the front of an eastbound train (train #8700) sideswiped the rear of a westbound train (train #5785) that had pulled onto a sidetrack to permit the eastbound train to pass by on the main track. The rear of the westbound train had not cleared the main track when the eastbound train attempted to pass, which resulted in a collision that led to the derailment of both trains.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3. After the derailment, the Signal Department of the LIRR conducted an investigation and determined that the root cause of the accident was a signal failure on the sidetrack onto which the westbound train had pulled. Specifically, the Signal Department concluded that, even though the westbound train was on the sidetrack in close proximity to the main line, this information failed to register electronically in the LIRR signal system, which indicated instead that the westbound train had cleared the main line with sufficient space for the eastbound train to pass. Based on its investigation, the Signal Department attributed the signal failure to a broken rail bond (the "SK2 Rail Bond"), which is an electronic jumper around a joint in the rails of a track to ensure continuity of conductivity for signal currents. As a result of the break, the portion of the sidetrack that held the rear of the westbound train did not register in the LIRR signal system as occupied, which in turn had the effect of indicating that the eastbound train was clear to proceed even though there was not enough space for it to pass the westbound train.

4. Based on a review of records, including a test form, and discussions with members of the LIRR Signal Department, the SK2 Rail Bond had been purportedly inspected prior to the derailment on April 26, 2019 by Stuart Conklin, a Signal Inspector with the LIRR. The test form, which had been signed by Conklin, indicated that the "Rail Bonds" for track circuit "2-B1TR" at the location "SK2" had "pass[ed]" inspection on April 26, 2019. The SK2 Rail Bond was the rail bond that was subsequently found broken by the LIRR Signal Department after the derailment. Instructions included on the test form describe the "test procedure" to be used for inspecting rail bonds. That procedure directs the inspectors to "[v]isually inspect all rail bonds on all track circuits within the limits of all interlockings. To ensure bond wire integrity – apply pressure to bond wires to ensure proper

connectivity."  The test form further directs that the rail bond inspections (along with certain other tests) are to be performed every 90 days.

5. The test form is required to be completed and maintained by LIRR to comply with safety regulations promulgated and administered by the Federal Railroad Administration ("FRA"), which is an agency within the United States Department of Transportation.  The back of the test form references 49 C.F.R. § 234.271, which states: "Insulated rail joints, bond wires, and track connections shall be inspected at least once every three months."  That regulation was promulgated by the United States Secretary of Transportation pursuant to authority granted to the Secretary by Title 49, United States Code, Section 20101 et seq., including, among other provisions, 49 U.S.C. § 20103(a) ("The Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railroad safety . . . .") and 49 U.S.C. § 20107(a)(1) ("To carry out this part, the Secretary of Transportation may take actions the Secretary considers necessary, including . . . requir[ing] the production of documents . . . and prescrib[ing] recordkeeping and reporting requirements . . . .").

6. DOT-OIG agents have reviewed records associated with Stuart Conklin's employment by LIRR.  Those records include a handwritten letter of resignation signed by Conklin and dated May 31, 2019 – approximately six days after the derailment.

7. On or about December 13, 2019, DOT-OIG agents conducted an interview of an employee of the LIRR ("LIRR Employee No. 1").  LIRR Employee No. 1 was assigned to work at the Speonk Interlocking branch from approximately the beginning of March 2019 to the beginning of May 2019.  LIRR Employee No. 1 said in sum, substance, and relevant part, that he recalled Conklin's conducting rail bond inspections in late April

2019, but that, during that process, LIRR Employee No. 1 observed Conklin cease conducting the inspections before reaching the SK-2 Rail Bond.

8.     As part of the investigation, DOT-OIG agents have obtained certain video footage from cameras maintained by the LIRR at the Speonk Interlocking branch.  I and other agents have reviewed the footage, including footage from a camera that shows the SK-2 location on April 26, 2019 – the day on which Conklin purportedly performed the inspection of the relevant rail bond.  DOT-OIG agents have reviewed employee work time information provided by the LIRR that shows that Conklin purportedly worked a 6:00 a.m. to 2:00 p.m. shift that day.  At no time on that day during the 6:00 a.m. to 2:00 p.m. work shift does the footage show Conklin (or anyone else) performing an inspection of the SK2 Rail Bond.

9.     DOT-OIG agents have reviewed email communications for certain LIRR employees from on and around the time of the derailment.  Those emails indicate that, following the derailment, LIRR employees undertook to re-inspect certain pieces of LIRR equipment that had previously been purportedly inspected by Stuart Conklin.  According to the emails, those re-inspections identified other instances in which bonding wires were either broken or in poor condition – observations that were not included on the most recent inspection forms for the same bonds completed by Conklin.  As with the test form described above, these inspection forms were required to be completed and maintained by LIRR to comply with safety regulations promulgated and administered by the FRA.

10.    In addition, location information for Stuart Conklin's cellphone and other evidence show that Conklin was absent from his duty station during work shifts on multiple occasions.  On January 22, 2020, the Honorable Cheryl L. Pollak, Chief United

States Magistrate Judge, signed a search warrant authorizing the receipt of location information, including cell site data, for a cellphone subscribed to by Conklin (the "Conklin Phone"). I have reviewed the records provided by the service provider for the Conklin Phone in response to the warrant and compared them with other information, including Conklin's time records, work assignments, inspection forms, and other records and materials. My review of the records shows multiple other instances in which the Conklin Phone was not at an LIRR location when he was supposed to be.

11. For example, an LIRR "Daily Labor Distribution Report" dated March 19, 2019 showed Conklin scheduled to work from 6:00 a.m. through 2:00 p.m., to be followed by an overtime shift from 4:00 p.m. to 8:00 p.m. Location data for the Conklin Phone showed that the Phone was located near Ronkonkoma, New York and used in connection with telephone calls at approximately 7:09 p.m.; 7:10 p.m.; and 7:34 p.m. Based on discussions with LIRR personnel, I am not aware of any work-related reason for Conklin to have been in Ronkonkoma at those times.

12. Another LIRR "Daily Labor Distribution Report" dated March 22, 2019 indicated that Conklin was scheduled to work from 6:00 a.m. to 2:00 p.m. that day and then to work an overtime shift from 4:00 p.m. to 8:00 p.m. the same day. Based on discussions with LIRR personnel, I understand that the overtime shift was required so that Conklin could check certain LIRR locations for vandalism. LIRR personnel have provided me with a copy of a handwritten note dated March 26, 2019 and signed by Conklin. In the note, Conklin wrote that, beginning at 4:30 p.m. on March 22, 2019, he started checking various LIRR locations for vandalism, starting with "SK2," which I understand to be a

reference to the Speonk Interlocking branch. Conklin wrote that he used his personal vehicle to check the sites (as opposed to a work vehicle) during the overtime shift.

13. Data from the Conklin Phone showed that the Phone was in the vicinity of Ronkonkoma, New York at approximately 7:15 p.m. on March 22, 2019. Conklin's handwritten note indicated that at 7:15 p.m., he was checking LIRR site CO78 – the Pine St. Highway Grade Crossing. This location is in the vicinity of East Moriches, which is approximately twenty miles from Ronkonkoma.

Based on the information set forth above, there is probable cause to believe that Stuart Conklin knowingly and willfully made false entries on inspection forms maintained by the LIRR in part to comply with rules and regulations promulgated and enforced by the FRA under authority granted to the United States Secretary of Transportation, in violation of 49 U.S.C. § 21311.

WHEREFORE, your deponent respectfully requests that an arrest warrant issue so that the defendant STUART CONKLIN may be dealt with according to law.

_____
ROBERT J. STANEK
Special Agent, DOT-OIG

Sworn to before me by telephone this
16th day of March, 2021

_____
THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of New York

| United States of America | ) |
| v. | ) |
| STUART CONKLIN | ) Case No. 21-MJ-329 |
| *Defendant* | ) |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Stuart Conklin ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

  False Inspection Report (49 U.S.C. s. 21311)


Date: 03/16/2021

*Issuing officer's signature*

City and state:   Brooklyn, NY

Hon. Ramon E. Reyes, Jr., U.S.M.J.
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:

Known aliases:

Last known residence:

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:

Social Security number:

Height:                                           Weight:

Sex:                                              Race:

Hair:                                             Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*: